## Connelly v. Prudential Ins. Co. of America.

Feb. 6, 1942.

John H. Dougherty and John R. Moreman for appellant.

Samuel Blitz and Bruce & Bullitt for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and defendant below, Prudential Insurance Company of America, issued to the Louisville & Nashville Railroad Company a group or master policy by which it agreed, upon certain specified terms, to in-

sure the lives of the employes of the railroad company in amounts measured by the schedule of wages of the employes and other facts not necessary to mention. In the employment of the insured company was one John J. Connelly, who, according to the group policy, was entitled to an individual benefit certificate on his life for $2,000, but it was left optional with the employe whether or not he would accept the benefit of the group policy and obtain an individual certificate from the insurance company to that effect. Connelly accepted the provisions of the group policy and the insurer issued to him such certificate; but it was specified therein that his rights were measured by the agreements, stipulations and conditions of the group policy. It, according to its express terms, ran for only three months, but was renewable at the end of each period thereof, either by express agreement or by acquiescence of the parties thereto. In administering its terms and obligations at the end of each three month period the policy would continue for another three month period, but it was stipulated that at the end of any such period the prior group policy contract might be terminated and another one based upon different terms and conditions might be entered into. The policy, as well as the individual certificate issued to Connelly, contained two conditions upon which liability would attach to the insurer, which were: (1) To pay to the estate of the insured, or his named beneficiary in his certificate, the amount of his policy, and (2) that if the insured employe after obtaining his certificate became "continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his or her lifetime," and the disability occurred at a time when the insurance was in force and effect and the insured was under sixty years of age, then the company would waive future premiums "during successive renewal periods," and would thereafter pay during such disability to the insured employe total disability benefits to the extent of the amount of the policy at the rate (in this case) of $42.55 per month on each $1,000 of insurance, which in Connelly's case would consume the amount of his policy within the period of two years. Under the group policy the insured railroad company agreed to pay the monthly premiums to the insurance company, but it, of course, had the right (which it expressed) to require the employe to contribute an agreed proportion thereof out of his wages.

The premium on Connelly's policy was paid up to December 1, 1931, but he performed no labor for his employer during the previous month of October, since, as appears from the testimony, about the beginning of it he was "rolled out of his position," which, it is explained, meant that the duties he was then performing for his employer were due to be performed by another under seniority rights and some time was consumed in settling that matter. However, it was averred, when Connelly ceased to work on October 1, that it was on account of physical affliction which produced total disability and entitled the employe to all of the disability benefits—as well as waiver of premiums—as stipulated in the policy.

In the individual certificate of Connelly his mother, Anna C. Connelly, was made his beneficiary. Prior to January 1, 1932, an agreement was entered into between the Railroad Company and its insurer to terminate the group policy at that date and to enter into a new contract of insurance on entirely different terms, among which was the elimination of total permanent disability benefits, in addition to the death benefit covered by the policy; and the insured issued its circular notifying all of its employes of that fact and to accept the provisions of the new contract when made as they had done under the prior group policy; but Connelly declined and neglected to accept the benefits of the renewed policy, which was executed at the end of a three month period that the current group policy covered, and under which he was personally insured by virtue of the issual to him of his certificate. Therefore, if Connelly became totally and permanently disabled—as described in the policy from and after October 1, 1931, then the failure to pay his premium for all other months of that three month period was waived under the provisions referred to, but the whole insurance was terminated at the end of the current period of three months, which was on December 31, 1931. However, Connelly, not having accepted the new, or substituted, policy entered into at that time there was no premium paid for any insurance on his life thereafter.

On January 28, 1932, Connelly returned to work and continued at his job until February 14 of the same year, when he became afflicted with influenza, which later developed into pneumonia, followed by his death on February 29, 1932. His mother, Anna C. Connelly, the beneficiary of his insurance, died on March 22, 1935, more

than three years thereafter, but she took no steps to collect any of the benefits as beneficiary under her son's policy at any time throughout her life. Before her death she executed a will in which she appointed her son, the plaintiff, Leo Connelly, executor thereof. He qualified after his mother's death, and on May 7, 1935, he filed this action in the Jefferson circuit court against the defendant and insurer, Prudential Insurance Company of America, by which he sought to recover the amount of his brother's insurance as a death benefit. He afterwards amended his petition and also sought recovery of permanent disability benefits, which he averred he was entitled to under the facts and the terms of the policy. The court, on motion, required him to elect whether he would proceed to recover the death benefits, or permanent disability benefits, and he elected to prosecute his action to recover for death benefits.

The answer of defendant relied on the terms of the contract of the group policy hereinbefore pointed out and averred that at the time of the death of the insured the policy contract had terminated by its own terms; that Connelly declined to accept insurance under the substituted group policy in lieu of the old one and that the waiver of the premium clause was only for the unexpired period covered by the then current policy, which was reached on December 31, 1931. Lastly, it was denied that Connelly was permanently disabled within the contemplation of the policy. Upon the trial, before a jury, the court at the close of the testimony, sustained defendant's motion for a peremptory instruction for a verdict in its favor, which was returned. Plaintiff's motion for a new trial having been overruled he prosecutes this appeal.

In the brief of plaintiff's counsel much argument is advanced having no relevancy to the issue that was tried and which was—whether or not the employe's policy was in force and effect at the time of his death so as to entitle the beneficiary thereunder to recover its amount? In the portion of the brief devoted to that phase of the case it is argued by counsel for appellant that the waiver of the payment of the premiums took care of the failure to pay the premium due for the months of December, 1931, and January and February, 1932. The correctness of that position is, in turn, dependent on whether or not the premiums to be waived embraced those becoming due

after the current contract terminated on December 31, 1931, and also upon the fact as to whether or not Connelly became totally disabled so as to entitle him to the waiver before the termination of his current insurance.

It is admitted—by express stipulation—that Connelly never accepted the terms or became insured in any manner under the new policy executed January 1, 1932. Therefore, if the current policy in force at the time he became disabled terminated before that date it ceased by its own terms to possess any obligatory force thereafter, except to entitle him to permanent disability benefits under his right that matured while that current policy was in force and before its termination. If he became so disabled at such period, then he would be entitled to collect for the unpaid disability benefits; but whether or not the obligation to pay unpaid disability benefits at the time of his death survived that event is a question not presented in any manner in the case, and which we will not attempt to decide.

Under the election made by plaintiff (and of which he makes no complaint on this appeal) the only case for trial was the liability of defendant for the death benefit provided by the insurance. As we have seen, no monthly premium was paid for the months of December, 1931, nor for the two following months of January and February, 1932, and his policy would have lapsed therefor even if his insurance had continued under the same policy thereafter, unless he was totally disabled so as to entitle him to a waiver of premium payments under the permanent disability provisions of his insurance.

The proof on the issue of total disability is exceedingly vague and totally unconvincing. No layman associate of Connelly testified to any facts remotely establishing total and permanent disability as commencing at the time relied on in the petition. However, his physician was introduced and he testified that his patient (Connelly) was both nervous and anemic, but that "he was a very bright boy" and "he could do his work all right." He furthermore testified that the insured was subject to "spells" which occurred "about every two or three months," but that each of them was "all over in a little bit. It did not last long," and that "these spells were the things that troubled him the most." The same physician, when Connelly resumed his labors on January 28, 1932, recommended to the Railroad Company his abil-

418

ity to resume work, and, of course, the recommendation carried with it the witness' opinion that he was able to perform that work. In his testimony, however, he declared that in his opinion Connelly was unable to do any work for compensation, although his affliction chiefly consisted in the described "spells" to which we have referred, and which bears a close resemblance to epilepsy. At any rate, we are clearly of the opinion that there was a total failure to establish the permanent disability contemplated by, and described in the insurance contract, even were it necessary to decide that issue, but which we conclude is not true, since, as we have seen, the future premiums that were waived under the disability policy were only those accruing within the current term of the insurance contract when the disability occurred, and not premiums that accrued under a new insurance contract made thereafter. Therefore, under no phase of the case did plaintiff establish a right to recover, and the court correctly sustained defendant's motion for a peremptory instruction.

Wherefore, for the reasons stated, the judgment is affirmed.